IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED
2006 DEC 20  A 11: 18

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| VANIA MOORE, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | CIVIL ACTION NO.: |
| V. ) | CV- 1:06CV1128-WKW |
| ) | |
| WILLSTAFF CRYSTAL, INC., ) | JURY DEMAND |
| D/B/A WILLSTAFF ) | |
| WORLDWIDE, ) | |
| ) | |
| DEFENDANT. ) | |
| ) | |

## COMPLAINT

**I.  JURISDICTION**

1.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331, 1343(4), 2201 and 2202. This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, including the Civil Rights Act of 1991, 42 U.S.C. § 1981a and 42 U.S.C. § 1981. The jurisdiction of this Court is invoked to secure the protection of and to redress the deprivation of rights secured by Title VII and 42 U.S.C. § 1981, providing for injunctive and other relief against race discrimination and retaliation in employment.

1

## II. PARTIES

2. The plaintiff is an African-American female, a citizen of the United States, and a resident of the State of Alabama. The plaintiff began working for the defendant in its Dothan, Alabama, location on or around March 2003 and worked until approximately January 27, 2006.

3. The defendant, Willstaff Crystal, Inc., d/b/a Willstaff Worldwide, (hereinafter "Willstaff" or "Defendant") is an entity subject to suit under Title VII and 42 U.S.C. § 1981.

## III. FACTS

4. The defendant is an employment service which provides temporary and permanent employees for its clients. In its Dothan location, Willstaff places three categories of employees– Light Industrial, Clerical and Administrative, and Career and Professionals.

5. Plaintiff was hired by the defendant in March of 2003 to be the Personnel Manager for the Light Industrial employees. During her employment, plaintiff was the only black employee who worked in the defendant's Dothan location.

6. Plaintiff's job duties included, but were not limited to, screening applicants for the unskilled labor pool, entering employees' computer data, filling clients' orders based on their hiring criteria, taking calls on a rotating basis to fill

customers' emergency hiring needs, handling worker's compensation claims and unemployment hearings, and making daily sales calls on potential customers.

7. Plaintiff's direct supervisor during her employment with the defendant was the Area Sales Manager, Jennifer Espy, who is a white female. Ms. Espy's direct supervisor was David Duffy, a white male.

8. After starting work with the defendant, plaintiff realized that job assignments were often made by the defendant based upon race. Plaintiff was in charge of placing unskilled workers, who were predominately black and Hispanic. Espy often steered black employees into the unskilled category regardless of their skill level. In addition, Espy often placed white employees in the skilled section, where they would be eligible for permanent positions regardless of their skill level.

9. The defendant treated white employees differently than black employees and honored customer requests for employees of a certain race. For example, plaintiff was sent to handle payroll questions if the employee was black, but a white employee of the defendant would handle payroll questions, if the employee was white. Also, the defendant had separate waiting rooms for light industrial employees, which amounted to having one waiting room for black and Hispanic employees and one for white employees. Espy strictly enforced the segregation of the employees in the waiting areas.

10. Some of the defendant's customers did not want black employees, and for those customers, plaintiff was taken off their accounts, even if the account included unskilled workers. There was a time during her employment with the defendant when the plaintiff occasionally handled clerical and office workers orders from customers; however, Espy took this duty away from her because certain customers preferred white employees. On one occasion, plaintiff sent a black female for a clerical or office position, and Espy told her that the white woman who usually handled this category of employees knew which customers had these "special requests." Plaintiff was also instructed to recruit and send only Hispanic workers for particular customers.

11. On several occasions, plaintiff brought in accounts that Espy gave to a white coworker, Sara Enfinger, who received the commissions on these accounts instead of the plaintiff. However, Espy never required Enfinger to give up unskilled accounts to the plaintiff. Plaintiff was also treated differently than white personnel managers in the manner in which the "temp pool" proceeds were divided by Espy.

12. While employed with the defendant, plaintiff sought promotions to higher paying Account Manager position on several occasions. Espy filled these positions with less qualified white candidates, including Becky Smith, John Paul Warner, Susan Hicks, Lane Blanford, and Lisa Fields. On one occasion that plaintiff

sought an Account Manager position, Espy told her that most of the people employed at companies in the Dothan area are "rednecks" who don't respond to black salespeople. Espy said that white females with blond hair and blue eyes tend to be more successful salespersons. Moreover, the plaintiff sought a promotion to a Staffing Specialist position, which Espy filled with a less qualified white female, Marianne Myers, in approximately December of 2005.

13. Further, in December of 2005, plaintiff contacted the Equal Employment Opportunity Commission in order to learn about filing a charge of race discrimination. Plaintiff informed Espy that she was going to the EEOC in order to file a complaint of race discrimination. Almost immediately thereafter, Espy gave plaintiff a written disciplinary action.

14. In fact, during her tenure with the defendant, plaintiff made other complaints of race discrimination regarding issues involving promotions, pay, and customer preferences for white employees to Espy, Duffy and Nancy Apel, the defendant's Human Resources Manager. None of plaintiff's complaints were ever adequately addressed by management of the defendant. In fact, plaintiff's opposition to race discrimination seemed only to agitate Espy and Duffy.

15. Also in December of 2005, plaintiff learned that Espy brought ten Jamaican employees to Enterprise to work. Although, these individuals had welding

and electrical skills, Espy placed them in the unskilled pool and sent them to cut chickens at a local plant. When Espy learned that these Jamaican employees did not want to continue working at the plant, she stated, "I'll be damned if those black monkeys are going to tell me where they are going to work." Espy then effectively terminated these workers from the defendant's system.

16. After learning of this incident with the Jamaican employees and as the result of the race discrimination plaintiff had suffered and observed during her tenure with the defendant, she resigned on or about January 27, 2006.

## IV. CAUSES OF ACTION

### COUNT I — RACIAL DISCRIMINATION

17. The plaintiff re-alleges and incorporates by reference paragraphs 1-16 above with the same force and effect as if fully set out in specific detail hereinbelow.

18. During her employment, the defendant discriminated against the plaintiff because of her African-American race in wages, promotions, job assignments, discipline, constructive discharge, and other terms, conditions and privileges of her employment.

19. The defendant's articulated reasons for these actions are not legitimate.

20. Said racial discrimination was done maliciously, willfully, and with reckless disregard for the rights of the plaintiff.

21. The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory and punitive damages is her only means of securing adequate relief.

22. The plaintiff is now suffering, and will continue to suffer irreparable injury from defendant's unlawful conduct as set forth herein unless enjoined by this Court.

### COUNT II — RETALIATION

23. The plaintiff re-alleges and incorporates by reference paragraphs 1-22 above with the same force and effect as if fully set out in specific detail hereinbelow.

24. The plaintiff complained to management of the defendant that she was being discriminated against based on her race.

25. In response to the plaintiff opposing discrimination and/or engaging in protected activity, the defendants retaliated against the plaintiff in discipline, job assignments, promotions, wages and other terms, conditions and privileges of employment.

26. Said retaliation was done maliciously, willfully, and with reckless disregard for the rights of the plaintiff.

27. The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive

relief, and compensatory and punitive damages is her only means of securing adequate relief.

28. The plaintiff is now suffering, and will continue to suffer irreparable injury from the defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## V. PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the defendant violate the rights of the plaintiff secured by Title VII and 42 U.S.C. Section 1981.

2. Grant the plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting in concert with the defendants and at thee defendants' request from continuing to violate Title VII, as amended, and 42 U.S.C. § 1981.

3. Enter an Order requiring the defendant to make the plaintiff whole by awarding her the position she would have occupied in the absence of race discrimination and retaliation by awarding her back-pay (plus interest), front pay, lost seniority, benefits, loss of pension, compensatory, punitive damages and/or nominal

damages and post judgment interest.

4.   The plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY**

Respectfully submitted,

_____
Jon C. Goldfarb (GOL015)
Maury S. Weiner (WEI021)
Ethan R. Dettling (DET001)
Counsel for Plaintiff

**OF COUNSEL:**

Wiggins, Childs, Quinn & Pantazis, LLC
301 19th Street North
Birmingham, AL 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500

**DEFENDANT'S ADDRESS**:

Willstaff Crystal, Inc.,
d/b/a Willstaff Worldwide
CSC Lawyers Incorporating Svc., Inc.,
150 South Perry Street
Montgomery, Alabama 36104